UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                         Case No: 8:18-cr-182-EAK-AEP

JUAN LEANA CASTREJON     ///

### DEFENDANT'S MEMORANDUM IN SUPPORT OF A REASONABLE 3553 SENTENCE OF NO MORE PRISON THAN THE 10 YEAR MIN/MAN

**COMES NOW THE DEFENDANT, Juan Leana Castrejon**, by and through his

undersigned counsel, pursuant to 18 U.S.C. s.3553, and makes this his Memorandum in

support of a Reasonable 3553 Sentence of no more prison than the 10 year min/man, and

respectfully says:

**Objection to Recommended Sentence as resulting in an "unreasonable" sentence,
one greater necessary to accomplish the goals of sentencing (18 USC 3553(a)(1)-(7))
and Motion for Downward variance sentence to the 10 year min/man required by
statute**

Paragraph 80 Objection: to a 168-210 months recommended sentence and motion for

downward variance sentence (total offense level 33 and criminal history category III, 168

months (14.00 years)-210 months (17.5 years)).

Both Counts of conviction carry a statutory 10 year min/man prison sentence, to life in

prison maximum.  The Defendant moves for a downward variance to a 10 year min/man

prison sentence.

**18 USC s.3553:  14.00 years (168 months) in prison would be an unreasonable
sentence, and greater than necessary to achieve the goals of sentencing as expressed
in 18 USC s.3553(a)(1)-(7) and the policies referenced therein, warranting a
downward departure because:**

1. This 37 year old Mexican (page 2 PSIR 4/19/81) ("psir [presentence investigation report] henceforth "paragraph" is "p.") has an expected life expectancy of 73.5 years.

U.S. Central Intelligence Agency, The World Factbook:

"Life expectancy at birth: This entry contains the average number of years to be lived by a group of people born in the same year, if mortality at each age remains constant in the future. Life expectancy at birth is also a measure of overall quality of life in a country and summarizes the mortality at all ages. It can also be thought of as indicating the potential return on investment in human capital and is necessary for the calculation of various

actuarial measures.
total population: 76.3 years (2018 est.)
male: 73.5 years (2018 est.)
female: 79.2 years (2018 est.)
country comparison to the world: 89"

https://www.cia.gov/library/publications/the-world-factbook/geos/mx.html

This means this 37 year old has most likely only live 36 years before passing away.  A 14 year prison sentence (low end of USSG range) would result in almost 40% of the rest of his life in prison (38.8%) (14 is 38.8 percent of 36 years left to live).  A 10 year prison sentence (statutory minimum mandatory) would result in almost 28% of the rest of his life in prison (27.8%) (10 is 27.8 percent of 36 years left to live).

In summation, a 10 year prison sentence is a whopping 27.8% of the rest of his life in prison, which is sufficient to accomplish the goals and policies of sentencing; any more, let alone the low end of the USSG range (almost 40% of the rest of his life in prison) would be "unreasonable", in that, it would result in greater than necessary incarcerative punishment to accomplish the punishment goals of sentence, and would place too little attention on the humane factors of the criminal justice system, offending Due Process and other fundamental principles of the criminal justice system.

**2. Post-*Booker* courts have noted that recidivism is markedly lower for older defendants."** *United States v. Lucania*, 379 F.Supp. 2d 288, 297 (E.D.N.Y. 2005); "Under the Guidelines, age was not normally relevant to sentencing. S. 5H1.1.  Post-Booker, however, at least one Court noted recidivism drops substantially with age", *Simon v. United States*, 361 F.Supp. 2d 35 (E.D.N.Y. 2005); BOTH quoted in <u>*Defending a Federal Criminal Case, 2010 Edition,* Federal Defenders of San Diego, Inc. ("*Federal Defender*") s.17-905</u>.  "Recidivism rates decline relatively consistently as age increases" (<u>*Federal Defender* s.17-905</u> quoting *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12, 28 (2004); available at www.ussc.gov/publicat/Recidivism_General.pdf )

The Commission has recognized the advisability of revising the guidelines to take age of the offender into account. *Please see* <u>Measuring Recidivism at 16</u> (noting that "[o]ffender age is a pertinent characteristic" that would "improve [the] predictive power of the guidelines "if incorporated into the criminal history guidelines, but has recently stated that age "may be relevant" in granting a departure. <u>USSG 5H1.1</u>). In imposing the least sufficient to account for the need to protect the public from further crimes of this Defendant, this Court should consider the statistically low risk of recidivism presented by Defendant's history and characteristics. *Please see* e.g., <u>*U.S. v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009)</u> ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); <u>*U.S. v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007)</u> (affirming below guidelines sentence based on defendant's age, which made it unlikely that he would be again involved in a violent crime); <u>*Simon v. U.S.*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005)</u> (basing variance in part

on Defendant's age of 50 upon release because recidivism drops substantially with age); _U.S. v. Nellum_, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005) (granting variance to 57 year old defendant because recidivism drops with age).

**3. The harsh effect incarceration has on innocent family members**

The harsh effect incarceration can have on innocent family members is a factor courts can consider under s.3553(a), _Defending a Federal Criminal Case, 2010 Edition,_ Federal Defenders of San Diego, Inc. ("Federal Defender") at p.17-864, section 17.05.18.01, citing to various cases: _United States v. Antonakopoulos_, 399 F.3d 68 (1st Cir. 2005) (on remand of bank fraud case, district court may consider defendant's role as caretaker for brain-damaged son even though alternative means of care existed); _United States v. Taylor, 280 Fed. App'x 397 (5th Cir. 2008) (unpublished)_ (60 month prison term for trading child pornography was not plain error, despite a guideline sentence of 120 months, based on defendant's lack of a prior record, his youth, and impressive employment history, supportive testimony of his wife, mother, and stepfather, and the needs of his newborn son); _United States v. Dominguez_, 296 F.3d 192 (3d Cir. 2002) (district court erred in concluding it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her); _United States v. Prisel_, 316 Fed. App'x 377 (6th Cir. 2008) (unpublished) (sentence of one day in prison plus three years supervised release for possessing child pornography upheld despite guideline range of 27-33 months, where defendant worked from home, and had a dependent wife with whom he had a mortgage for which they jointly owed over $70,000); _United States v. Owens_, 145 F.3d 923 (7th Cir. 1998) (departure from 169 to 120 months under s.5H1.6 for defendant who

maintained good relationship with his children and court believed his active role raising

and supporting his family was atypical for crack dealer and imprisonment may have

forced wife on public-assistance and defendant also spent time with brother with Downs

Syndrome); *United States v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008) (sentence of

probation affirmed where justified by the atypical nature and circumstances of the felon

in possession case and by the defendant's need to care for her nine-year-old

developmentally-disabled son); *United States v. Menyweather*, 431 F.3d 692 (9th Cir.

2005) (in $500,000 embezzlement case, no abuse of discretion to depart 8 levels to

probation in part because defendant's care for daughter, which was unusual compared to

other single parents); *United States v. Leon*, 341 F.3d 928 (9th Cir. 2003) (departure

granted for defendant who was sole care giver of suicidal wife who also suffered from

renal failure); *United States v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000) (district court had

discretion to depart downward 4 levels for extraordinary family circumstance that

defendant's 8-year old son had lost his father and would be losing his mother for

substantial amount of time); *United States v. Garcia-Salas*, 260 Fed. App'x 27 (10th Cir.

2007) (unpublished) (sentence at bottom-end of guideline range reversed and remanded

for resentencing because it is clear 10th Circuit precedent had effectively foreclosed

variances and post-Gall and Kimbrough, district court had greater sentencing discretion

than it thought it did; defendant argued for a lower sentence for his extraordinary physical

impairment, vulnerability in prison, extraordinary family circumstances, and mental and

emotion condition); *United States v. Gauvin*, 173 F.3d 798 (10th Cir. 1999) (3-level

departure to make defendant eligible for shock incarceration was warranted under

s.5H1.6 to minimize impact on children where defendant supported 4 young children, his

wife worked 14 hour days, miles from home, was barely able to provide for children and risked losing custody of her children and her job, and no extended family could take custody of them); *United States v. Davis*, 2008 WL 2329290 (S.D.N.Y. June 5, 2008) (court imposed time-served on a first time offender whose devotion to the education of the six children of his 15 year marriage—even while the family lived in a homeless shelter – was attested to by a school teacher and a pediatrician, and by his wife's views that her children would be traumatized by his separation from them, and the judge believed incarceration would deny the children the "care and guidance clearly needed at this point in their lives"); *United States v. Crawford*, 2007 WL 2436746 (E.D. Wis. Aug. 22, 2007) (district court granted variance for defendant's family situation with five children and the impact incarceration would have on the children); *United States v. Boeka*, 2006 WL 3780400 (D. Neb. Dec. 20, 2006) (court imposed 12 months and one-day for bank robbery in which Cheez-Its were disguised as a bomb, and government did not oppose departing based on extraordinary family circumstances where defendant provided primary care for disabled 11-year-old who required constant help and defendant suffered from major depression and may have been considering suicide by police); *United States v. Bortnick*, 2006 WL 680544 (E.D. Pa. March 15, 2006) (unpublished.) (in $8 million fraud case for which Guidelines advised 51-63 months, court imposed $1 million fine and seven day sentence in part because defendant's son born with severe handicap needed attention and financial support and taking non-violent defendant with no criminal history out of family environment for protracted time would serve no social or penal purpose); *United States v. Bailey*, 369 F. Supp. 2d 1090 (D. Neb. 2005) (post-Booker departure from 24-27 months probation for defendant convicted of possessing

child pornography justified by expert testimony showing his presence was critical to his own child's recovery from molestation by a boyfriend of the child's mother, and there was reasonable expert assurance that defendant was not dangerous to the public (including children), and the benefit to the public of incarcerating Bailey was outweighed by the harm it would cause to his daughter); *United States v. Manasrah*, 347 F. Supp. 2d 634 (E.D. Wis. 2004) (judge departs two levels to probation with home detention for immigrant from West Bank, convicted of mail fraud where husband threatened to take the children back to the West Bank and to not let defendant see them again if wife incarcerated, a harm "far worse than those faced by a defendant-parent and her children in the usual case"); *United States v. Mateo*, 299 F. Supp. 2d 201 (S.D.N.Y. 2004) (downward departure granted in heroin case where defendant's two young children were thrust into the care of relatives who reported extreme difficulties raising them, and both fathers were absent); *United States v. Colp*, 249 F. Supp. 2d 740 (E.D. Va. 2003) (departure from 10 months to probation granted in tax evasion case because defendant was sole caretaker for husband disabled by brain injury); *United States v. Lopez*, 28 F. Supp. 2d 953 (E.D. Pa. 1998) (six-level departure granted for defendant who pled guilty to conspiracy to distribute heroin where defendant's mentally ill seven-year-old attempted suicide after defendant's arrest and defendant's parental rights would be terminated under full range of incarceration, and defendant was not involved in large-scale drug dealing).

The Defendant maintains a good relationship with his 6 siblings  (one half sister-p.58 & p.59) and his father (his mother passed in November last year due to liver pathology

(p.56), and although he has shared his current predicament with him, they remain supportive of him (p.60).

In 2014 Defendant married Lorena Vergara in Mexico, and they have two children together, aged daughter 4 and son 3 (p.63). His son receives medical condition for not being able to gain weight (p.63) for 9 months for unknown reasons. His wife cares for the children and makes sure they are taken care of while also working full time (p.63).

**4. After a significant sentence term in prison, at some point, studies say, longer sentences lose any more efficacy at deterence**

"(b) To afford adequate deterrence to criminal conduct."

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006) "Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." Id.; *Please see also* Zvi D. Gabbay, Exploring the Limits of the Rerstrative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." Id. at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1.

**5. Personal Cost to Defendant and his family; Cost to Society of Lengthy Incarceration (*sufficient but not greater than necessary*)**

The PSR Pg. 89 states it costs $36,300.00 per year to incarcerate offenders. This means, for example, that the cost of the 14 year low end of the USSG is $508,200, while the 10 year statutory min/man would cost $360,300 (a difference of $147,900).

Defendants ought to be sentenced to enough incarceration to satisfy "sufficient[ly]" the goals of punishment in sentencing factors and commission policy, while avoiding any "greater than necessary" expense and punishing sentence. A sentence which exceeds one that is sufficient, will be "unreasonable" and "unfair". *U.S. v. Fernandez*, 436 F.Supp. 2d 983 (E.D. Wis. 2006) (According to the *Federal Defender*, the Court in *U.S. v. Fernandez*, 436 F.Supp. 2d 983 (E.D. Wis. 2006) imposed a 126 months sentence because the career offender guideline range of 188-235 months, was greater than necessary to satisfy sentencing purposes, in part due to Sentencing Commission study on unfairness of career offender designation, *Federal Defender*, at p.17-847. Vol.II.

**6. The Personal and Economic Cost of Incarceration: a reason to Adjust Downward**

The *Federal Defender* lists the following cases with the following tenets:

*United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000) (Bright, J., concurring) (sentence will probably cost taxpayers $836,000, and the defendant his life. Guidelines range for nonviolent offenders drains billions from taxpayers and keeps potentially productive members of society locked up, causing staggering "opportunity costs"); *United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 20040 (cost of mandatory 61-year-sentence runs to $1,265,000, money that could otherwise be spent on other law enforcement or social programs to reduce crime); *United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993)

(court noting that "the non-rehabilitation purposes of incarceration – retribution, deterrence and incapacitation – would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for this sentence and receive very little in return."). _Federal Defender_ at pp. 17-866-867.

**Wherefore, the Defendant, Juan Leana Castrejon,** by and through his undersigned counsel, prays this Honorable Court enter its order imposing a reasonable sentence.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to the U.S. Attorney's Office, and all electronically connected parties, Via Electronic Filing, on Thursday December 6, 2018, before 1:00 p.m.

_Respectfully_ **submitted,**

/s/ Jorge León Chalela

**JORGE LEÓN CHALELA, Esq.**
**Jorge León Chalela, P.A.**
P.O. Box 173407
Tampa, Florida 33672
Office: (813) 221-5600
Personal Cell: (727) 415-4286
Fax: (813) 350-7801
chalelalaw@yahoo.com
FBN: 73245
Attorney for Defendant, Juan Leana Castrejon
